## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Anastacio Lemus Lopez,

          Plaintiff,

v.

Minneapolis Police Officers Russell Cragin, Anthony Rodin, Michael Grahn, Michael Fossum, Stephen McCarty, and Gerald Moore; Minneapolis Chief of Police Janeé Harteau; City of Minneapolis; Sheriff Richard W. Stanek; Hennepin County Attorney Michael O. Freeman; Hennepin County; Hennepin County Administrator David J. Hough; Monterrey Security Consultants, Inc.; Andrew Hodynsky; SMG; Minnesota Sports Facilities Authority; Minnesota Vikings Football Stadium, LLC; and Minnesota Vikings Football, LLC. All individuals being sued in their individual and official capacity.

          Defendants,

and

SMG,

          Cross-claim Plaintiff,

v.

City of Minneapolis,

          Cross-claim Defendant.

Case No. 17-cv-01179-PAM-KMM

## FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF

### JURY TRIAL DEMANDED

Plaintiff, ANASTACIO LEMUS LOPEZ, by and through his attorneys of record and for his First Amended Complaint, states as follows:

1

## INTRODUCTION

1.     This civil rights case arises from the excessive use of force against Plaintiff by officers of the Minneapolis Police Department and an employee of Monterrey Security which began at the US Bank Stadium during a Vikings football game in Minneapolis, MN. Defendants, lacking justification, attacked Plaintiff while Plaintiff was in custody, due to his color and ethnicity. Without provocation by Plaintiff, Plaintiff was violently forced to the ground, struck in the ribs with a knee numerous times, punched in the face with a closed fist multiple times, and repeatedly tased. He suffered fractured bones, severe bruising and pain, and lacerations.

2.     Despite lacking probable cause or reasonable suspicion that any crime had been committed, Defendant McCarty subsequently swore out a complaint against Plaintiff for disarming a police officer. McCarty caused false statements to be made against Plaintiff during grand jury proceedings, and as a result of these false statements, felony charges were filed against Plaintiff. Plaintiff was jailed, forced to make bail, and retained the services of an attorney. Plaintiff is currently facing trial on these charges.

3.     Plaintiff seeks, inter alia, a declaration that the actions of the Defendants violated his rights under the United States Constitution and Minnesota

2

Constitution; compensatory and punitive damages for violation of his civil rights; and his costs and attorneys' fees.

4.     Plaintiff has served timely notice of his state law claims in compliance with Minn. Stat § 466.05.

## JURISDICTION

5.     This Court has jurisdiction over the claims alleged in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 1332(a) (diversity of citizenship) and 42 U.S.C. §§ 1981, 1983, 1985-1986 and 1988.

6.     Additionally, supplemental jurisdiction over the pendent state law claims is proper pursuant to 28 U.S.C. § 1367.

## VENUE

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because all Defendants, upon information and belief, either reside or regularly conduct business within this District, and the acts or occurrences giving rise to the Plaintiff's claims took place in this District.

## PARTIES

### Plaintiff

8.     Anastacio Lemus Lopez is a Hispanic individual who is a United States citizen and a citizen and resident of Midland, Texas.

## Defendants

9.     Defendant Russell Cragin (Badge #1327) is an officer employed by the City of Minneapolis Police Department and is a law enforcement officer acting under color of state law as contemplated by 42 U.S.C. § 1983. Officer Cragin is being sued in his personal, individual, and official capacities pursuant to Minnesota Statutes § 466.01 et seq. and other applicable law.

10.     Defendant Anthony Rodin (Badge #6075) is an officer employed by the City of Minneapolis Police Department and is a law enforcement officer acting under color of state law as contemplated by 42 U.S.C. § 1983. Officer Rodin is being sued in his personal, individual, and official capacities pursuant to Minnesota Statutes § 466.01 et seq. and other applicable law.

11.     Defendant Michael Grahn (Badge #2378) is a sergeant employed by the City of Minneapolis Police Department and is a law enforcement officer acting under color of state law as contemplated by 42 U.S.C. § 1983. Sergeant Grahn is being sued in his personal, individual, and official capacities pursuant to Minnesota Statutes § 466.01 et seq. and other applicable law.

12.     Defendant Michael Angelo Fossum (Badge #2072) is a lieutenant employed by the City of Minneapolis Police Department and is a law enforcement officer acting under color of state law as contemplated by 42 U.S.C. § 1983.

Lieutenant Fossum is being sued in his personal, individual, and official capacities pursuant to Minnesota Statutes § 466.01 et seq. and other applicable law.

13.    Defendant Gerald Moore is a commander at the Minneapolis Police Department and is a law enforcement officer acting under color of state law as contemplated by 42 U.S.C. § 1983. Commander Moore is being sued in his personal, individual, and official capacities pursuant to Minnesota Statutes § 466.01 et seq. and other applicable law.

14.    Defendant Janeé Harteau was the Chief of Police at the Minneapolis Police Department and was acting in this capacity at all times relevant to this complaint. Chief Harteau is being sued in her personal, individual, and official capacities pursuant to Minnesota Statutes § 466.01 et seq. and other applicable law.

15.    Defendant City of Minneapolis is a Minnesota home rule charter city and a political subdivision of the State of Minnesota under the laws and constitution of the State of Minnesota, is a municipality under Minnesota law with the capacity to sue and be sued. The city is the legal entity responsible for the Minneapolis Police Department and Minneapolis City Attorney's Office. This defendant is being sued directly and also, on all relevant claims, on the theories of respondeat superior or vicarious liability and pursuant to Minnesota Statutes Section 466.02 for the actions of its officers and officials.

16.     Defendant Monterrey Security Consultants, Inc. is an Illinois corporation registered to conduct business in the State of Minnesota, which may be served at its office inside the US Bank Stadium at 401 Chicago Avenue, Minneapolis, MN 55415, or at its corporate headquarters located at 2232 South Blue Island Avenue, Chicago, IL 60608. At all times relevant to the events herein, Monterrey Security Consultants, Inc. was the contracted provider of security services at US Bank Stadium in Minneapolis, which had hired the aforementioned police officer defendants Cragin, Rodin, Grahn, and Moore to provide security during their off-duty hours pursuant to longstanding arrangements with the Minneapolis Police Department.

17.     SMG is a Pennsylvania general partnership registered to conduct business in the State of Minnesota, which may be served at its office inside the US Bank Stadium at 401 Chicago Avenue, Minneapolis, MN 55415, or at its corporate headquarters located at 300 Conshohocken State Road, Suite 450, West Conshohocken, PA 19428. At all times relevant to the events herein, SMG was the contracted provider of management services at US Bank Stadium in Minneapolis, which in turn had contracted Defendant Monterrey Security Consultants, Inc. to provide security services at US Bank Stadium in Minneapolis.

18.     Upon information and belief, Andrew Hodynsky is an employee of Monterrey Security Consultants, Inc. Defendant Hodynsky at all times relevant to

the events herein was acting under the color of law and in accordance with a custom, policy or practice established within Monterrey Security Consultants, Inc. for handling such events which form the various causes of action as set out more fully below in this Complaint, and was also directly supervising the actions of the aforementioned police officer defendants Cragin, Rodin and Grahn during the occurrence of such events. Defendant Hodynsky at all times relevant to the events herein was also acting under color of law in his individual capacity. Therefore, Defendant Hodynsky is sued both in his capacity as an individual and in his capacity as an employee of Monterrey Security Consultants, Inc.

19.    The Minnesota Sports Facilities Authority is a public entity formed by the Legislature of the State of Minnesota for the purpose of developing, owning and operating the US Bank Stadium in Minneapolis, Minnesota. At all times relevant to the events herein, Defendant Minnesota Sports Facilities Authority was the owner and operator of the US Bank Stadium in Minneapolis, Minnesota, and had contracted with SMG to provide management services for such facility, including security services that had been subcontracted by SMG to Monterrey Security Consultants, Inc.   This defendant is being sued directly and also, on all relevant claims, on the theories of respondeat superior or vicarious liability and pursuant to Minnesota Statutes Section 466.02 for the actions of its officers, agents, employees, contractors and officials.

20.    Minnesota Vikings Football Stadium, LLC is a Delaware limited liability company registered to conduct business in the State of Minnesota, which may be served at 9520 Viking Drive, Eden Prairie, MN 55344. At all times relevant to the events herein, Defendant Minnesota Vikings Football Stadium, LLC has been a wholly owned affiliate of the Minnesota Vikings professional football team that has entered into various binding agreements with different parties for the purpose of using and maintaining the US Bank Stadium in Minneapolis, Minnesota as the home venue for such football team, including contracts with the venue's owner and management entities that provide security services at football games played by the defendant's affiliated team, including the game that was being played at the venue at the time of the events described herein.   This defendant is being sued directly and also, on all relevant claims, on the theories of respondeat superior or vicarious liability and pursuant to Minnesota Statutes Section 466.02 for the actions of its officers, agents, employees, contractors and officials.

21.    Minnesota Vikings Football, LLC is a Delaware limited liability company, which may be served at 1010 Dale Street North, St. Paul, MN 55117, or at its corporate headquarters at 1209 Orange St., c/o Corporation Trust Co., Wilmington, DE 19801. Defendant Minnesota Vikings Football, LLC is the owner and operator of the Minnesota Vikings professional football team affiliated with the National Football League. At all times relevant to the events herein, Defendant

8

Minnesota Vikings Football, LLC's football team, the Minnesota Vikings, was playing a home game at US Bank Stadium for which security services were provided by the above-captioned defendants pursuant to contracts entered into by the defendant and/or its affiliate Defendant Minnesota Vikings Football Stadium, LLC. This defendant is being sued directly and also, on all relevant claims, on the theories of respondeat superior or vicarious liability and pursuant to Minnesota Statutes Section 466.02 for the actions of its officers, agents, employees, contractors and officials.

22.    Hennepin County is the county governmental entity in the City of Minneapolis and surrounding area. Hennepin County is the legal entity responsible for the Hennepin County Sheriff's Office and Hennepin County Attorney's Office. This defendant is being sued directly and also, on all relevant claims, on the theories of respondeat superior or vicarious liability and pursuant to Minnesota Statutes Section 466.02 for the actions of its officers and officials.

23.    Richard W. Stanek is the Sheriff of Hennepin County.

24.    Michael O. Freeman is the County Attorney for Hennepin County.

25.    David J. Hough is the County Administrator for Hennepin County. (Hough, together with Stanek, Freeman, and Hennepin County, shall be collectively referred to as the "Hennepin Defendants.")

26.    Upon learning through discovery the names of any other defendants, Plaintiff shall amend this Complaint to identify any other defendants.

27.    All Defendant law enforcement officers were, at all times relevant to this complaint, working as on or off duty licensed Minnesota peace officers acting within the scope and course of their official duties and employment as officers with the Defendant entities. Each has the authority to threaten, commence, or seek institution of a criminal prosecution or refer a matter for prosecution against Plaintiff.

## FACTS

28.    Plaintiff is a longtime fan of the Minnesota Vikings professional football team owned and operated by Defendant Minnesota Vikings Football, LLC (hereinafter the "Vikings").

29.    On or shortly before December 1, 2016, Plaintiff traveled more than a thousand miles from his home in Midland, Texas to Minneapolis, Minnesota for the purpose of personally attending a Vikings game at the team's home venue at US Bank Stadium.

30.    On the evening of December 1, 2016, Plaintiff entered US Bank Stadium, took his assigned seat and watched the Vikings game that commenced at approximately 7:30 pm Central Standard Time.

31.    Sometime around 9:50 pm local time, Plaintiff was approached in the section of the US Bank Stadium by a uniformed Minneapolis police officer, identified in police documents only as "Sgt. Jackson," who ordered Plaintiff to leave the stands and accompany him to a security processing center inside the stadium, where Plaintiff was to have his photograph taken and vital statistics recorded prior to being ejected from the venue.

32.    Upon receiving the order, Plaintiff voluntarily accompanied Sgt. Jackson and began walking out of his section of the US Bank Stadium towards an exit leading to the stadium's interior.

33.    Sometime before Plaintiff reached the exit leading to the stadium's interior, Defendant Cragin and Defendant Rodin appeared and took custody of Plaintiff from Sgt. Jackson, continuing to walk Plaintiff through the stadium on the way toward the security processing center.

34.    At all times relevant to the events described herein, Defendant Cragin and Defendant Rodin wore uniforms issued by the Minneapolis Police Department and held themselves out to the public as police officers.

35.    During the time that Plaintiff was walking with Sgt. Jackson and later Defendant Cragin and Defendant Rodin, Plaintiff was cooperative and did not resist the order for him to accompany the officers to the security processing center.

36.    Also during the time that Plaintiff was walking toward the exit with Sgt. Jackson and later through the exit with Defendant Cragin and Defendant Rodin, Plaintiff walked on his own volition and as a result was not handcuffed or otherwise restrained by the officers accompanying him.

37.    At the time Plaintiff was ordered to accompany the officers to the stadium's security processing center, Plaintiff was somewhat disoriented and walked rather slowly, occasionally slightly losing direction or his balance due to Plaintiff's having consumed alcoholic beverages during the football game.

38.    Sometime before Plaintiff was brought into the northwest service corridor of US Bank Stadium by Defendants Cragin and Rodin, Defendant Hodynsky, an employee of Monterrey Security Consultants, Inc., began to accompany them. Defendant Hodynsky was at that time working as the area director in the field for Defendant Monterrey Security.

39.    As of approximately 9:58 pm, Defendant Rodin had loosely intertwined his right arm with Plaintiff's left arm, apparently to guide Plaintiff around a corner as the group made its way through the stadium's northwest service corridor on its way to the security processing center.

40.    A surveillance camera recorded the movements of Plaintiff and Defendants Cragin, Rodin and Hodynsky as the group made its way through the northwest service corridor starting at approximately 9:58 pm.

41.    Based upon time codes marked on the stadium's surveillance video, Plaintiff remained in the northwest service corridor between 9:58 and 10:02 pm.

42.    As Plaintiff was led into the northwest service corridor by Defendants Rodin, Cragin and Hodynsky, Plaintiff turned his head toward Defendant Rodin a few times, attempting to speak to Defendant Rodin while continuing to walk in the direction he was being led in.

43.    During each brief moment that Plaintiff turned his head toward Defendant Rodin, Plaintiff's left arm remained fully intertwined with Defendant Rodin's right arm and Plaintiff did not make any attempt to break free of Defendant Rodin's grip.

44.    Also during each brief moment that Plaintiff turned his head toward Defendant Rodin, Plaintiff did not raise his hands or otherwise maneuver into a fighting stance vis-à-vis either Defendant Rodin, Defendant Cragin or Defendant Hodynsky.

45.    Each time Plaintiff turned his head and began speaking to Defendant Rodin, Defendant Rodin forcibly pushed Plaintiff toward the direction the group was walking in, causing Plaintiff to struggle to keep from falling.

46.    As Plaintiff kept trying to speak to Defendant Rodin, Defendant Rodin forcibly pushed Plaintiff into an electric golf cart vehicle parked in the corridor, causing Plaintiff to nearly lose his balance once again.

47.    Immediately after Plaintiff bounced off the electric vehicle, Defendant Rodin suddenly and violently grabbed Plaintiff with both hands and forcefully threw him head-first into a concrete wall, knocking over dozens of signs that had been stacked up against the wall and causing Plaintiff to fall to the floor in a face-down position.

48.    Immediately after Plaintiff fell face-down on the hard concrete floor, Defendant Cragin rushed over and used his arms to place Plaintiff into a headlock, forcibly holding Plaintiff's head face down to the floor.

49.    At the same time as Defendant Cragin placed Plaintiff into a headlock, Defendant Rodin jumped on top of Plaintiff's legs and torso, using his weight and strength to pin Plaintiff to the ground.

50.    After Plaintiff was pinned face-down on the concrete floor by the two aforementioned defendants, both of Plaintiff's arms were pinned down by Defendant Cragin, with each arm raised above Plaintiff's shoulders yet firmly on the floor.

51.    While Plaintiff was pinned down on the concrete floor and unable to move his head or arms, Defendant Rodin used his right knee to deliver at least four forceful blows to Plaintiff's abdomen.

52.    Subsequently, while Defendant Cragin continued holding down Plaintiff's head and arms, Defendant Rodin turned Plaintiff slightly, so that

Plaintiff was lying on his left side, and delivered two fist punches to Plaintiff's head while Plaintiff lay helplessly on the floor.

53.    Defendant Rodin then began maneuvering Plaintiff's left arm behind Plaintiff's back in preparation for handcuffing Plaintiff's hands behind Plaintiff's back, while at the same time, Defendant Cragin stopped pinning down Plaintiff's left arm so that the arm could be brought around behind Plaintiff's back for handcuffing.

54.    At this point, Plaintiff's body had been turned around so that Plaintiff was lying on his back, with Defendant Cragin releasing Plaintiff's head.

55.    When Defendant Cragin released Plaintiff's head, Plaintiff leaned his head slightly forward toward his chest, while his arms and body were still fully pinned to the floor by Defendants Rodin and Cragin.

56.    While Plaintiff was clearly still pinned down to the floor by both officers and helpless to defend himself, Defendant Rodin delivered another two fist punches to Plaintiff's face.

57.    In between Defendant Rodin's two punches to Plaintiff's face, Defendant Hodynsky grabbed and held Plaintiff's left arm so as to facilitate the punching.

58.    While Defendant Hodynsky was holding Plaintiff's left arm, Defendant Cragin removed his taser from his belt and pointed the taser at Plaintiff.

59.     At this point, Defendant Hodynsky let go of Plaintiff's left arm and Plaintiff's left arm harmlessly flailed from side to side as Plaintiff reeled from the pain of having been struck multiple times by Defendant Rodin.

60.     Shortly thereafter, Defendant Cragin leaned back and discharged his taser, causing taser probes to be lodged in Plaintiff's abdomen.

61.     The electric shock pain from Defendant Cragin's taser strike caused Plaintiff to bend forward and roll over slightly, which in turn caused the taser probes to fall out from Plaintiff's abdominal area.

62.     While Plaintiff was bending forward and waving his arms due to pain caused by the taser strike, Defendants Cragin and Rodin once again forcibly pushed Plaintiff down to the floor.

63.     Shortly thereafter, Defendant Cragin once again discharged his taser at Plaintiff, this time lodging probes into Plaintiff's right palm.

64.     At this point, Plaintiff promptly laid his head down on the floor and, while keeping both arms on the floor, raised both of his arms up in a surrender position.

65.     Shortly thereafter, Defendants Cragin and Rodin turned Plaintiff back around, so that Plaintiff was lying face-down on the floor, and began the process of handcuffing Plaintiff's hands behind his back.

66.    Around this time, Defendant Grahn appeared at the scene and assisted Defendants Cragin and Rodin with handcuffing Plaintiff, using his knees to forcibly keep Plaintiff pinned down while the other two cuffed Plaintiff, cuffing Plaintiff's left wrist with one pair of handcuffs, cuffing Plaintiff's right wrist with another pair of handcuffs, and then cuffing the two handcuff pairs together.

67.    Throughout the time that Defendants Rodin, Cragin and Grahn dealt with Plaintiff, Defendant Hodynsky stood close by and either observed the assault or gave instructions to the other defendants in between marking something down on a clipboard or directing passing stadium staff members not to watch the violent scene.

68.    After Defendants Rodin, Cragin and Grahn finished handcuffing Plaintiff, they instructed Plaintiff to stand up and pulled Plaintiff up by his left arm and shoulder until Plaintiff stood up, with Defendant Rodin holding Plaintiff's arms from behind.

69.    After getting up from the brutal assault, Plaintiff appeared dazed and had even more trouble keeping his balance as the uniformed officers began directing him to continue walking toward the security processing center.

70.    At approximately 10:02 pm, the group began walking toward the security processing center, with cords from the taser probes still dangling from

Plaintiff's right palm and still attached to the taser weapon Defendant Cragin continued to hold.

71.    Shortly afterward, Plaintiff arrived at the security processing center, where paramedics removed the taser probes from his right palm and treated Plaintiff for injuries to his right eye.

72.    Defendant Cragin requested Sgt. Gerald Moore to authorize probable cause to arrest and charge Plaintiff.

73.    Plaintiff was then transported in a police van to the Hennepin County Jail, where he was booked on a single charge of violating § 609.604 of the Minnesota Statues for attempted disarming of a police officer, and incarcerated in a Hennepin County facility pending release on bail.

74.    During his incarceration, the Hennepin Defendants failed to provide adequate medical attention and assistance and denied Plaintiff access to treatment appropriate to his condition.    Plaintiff was suffering from lacerations, contusions, and fractured ribs, yet he was not taken to a hospital or examined by a physician despite Plaintiff's repeated requests.    The need for medical examination was obvious given the preceding events and Plaintiff's visible injuries.    Plaintiff could reasonably have been suffering a concussion and/or internal hemorrhage that would have resulted in serious injury or death without medical attention.

75.    Subsequently, Defendant McCarty was assigned to investigate the incident.    Additionally, Defendant Fossum approved the false case report written by Defendant Cragin.

76.    At no time during Plaintiff's aforementioned interaction with any of the defendants did Plaintiff attempt to grab the gun belt of any officer, nor did Plaintiff attempt to grab or hold any weapon deployed by any of the defendants, including Defendant Rodin's taser gun.

77.    During Plaintiff's interaction with the aforementioned defendants, Plaintiff on occasion moved his arms or body as a natural and instinctive reaction to being violently assaulted by the defendants without provocation, such as by holding out his hand in front of his abdomen just prior to being tased for the second time.

78.    Despite video evidence, Defendants Stanek, Freeman, Hough, and Hennepin County falsely arrested, incarcerated, maliciously prosecuted, and failed to provide adequate medical attention to Plaintiff.

79.    Plaintiff categorically denies the criminal charge of attempted disarming of a police officer brought against him and was vindicated when he was found not guilty of such charges.

## COUNT  I.
## 42 U.S.C. § 1983 Excessive Use of Force
## Plaintiff against Defendants Cragin, Rodin, Grahn, Fossum, McCarty, Moore, Stanek, Freeman, and Hough

80.    Paragraphs 28 through 79 set forth above are incorporated herein by reference.

81.    As a result of Defendants Cragin and Rodin's malicious physical abuse, all above Defendants' excessive force, the filing of criminal charges despite the lack of probable cause to establish the existence of any crime, and the failure to provide adequate medical assistance, Defendants deprived Plaintiff of his right to equal protection of the laws and impeded the due course of justice, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

## COUNT  II.
## 42 U.S.C. § 1983 Monell claims
## Plaintiff against City of Minneapolis and Hennepin County

82.    Paragraphs 28 through 81 are incorporated herein by reference as though fully set forth.

83.    Defendants had a duty to properly supervise their respective employees and agents. Defendants breached that duty by:

a. Improperly training, authorizing, encouraging or directing officers and deputies to engage in excessive use of force including failure to provide adequate medical care, and/or condoning such actions.

20

b. Failing to instruct, supervise, control and discipline officers on a continuing basis on their duties to refrain from unlawfully and maliciously prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges and immunities; unlawfully and maliciously assaulting a citizen or otherwise using unreasonable and excessive force before, during, or after the making of an arrest, whether the arrest was lawful or unlawful; violating the rights, privileges and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the law of the State of Texas; and depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

84.    Defendants Cragin, Rodin, Grahn, Fossum, McCarty, Moore, Stanek, Freeman, and Hough acted consistent with this training and in an unconstitutional manner when they used excessive force against Plaintiff that was not justified by his behavior.

85.    Wherefore, as a direct and proximate cause of the actions of Defendant officers, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

## COUNT III.
## 42 U.S.C. § 1985 – Conspiracy to Deprive Plaintiffs of Rights
## Plaintiff Against Defendants Harteau, Cragin, Rodin, Grahn, Fossum,
## McCarty, Moore, City of Minneapolis, Stanek, Freeman,
## Hennepin County, and Hough

86.    Paragraphs 28 through 85 are incorporated herein by reference as though fully set forth.

87.    Defendants conspired together in violation of Title 42 U.S.C. § 1985(3) to deprive Plaintiff of his right to equal protection of the laws and impeded the due course of justice, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

88.    Defendants within the Minneapolis Police Department, City of Minneapolis, Hennepin County Sheriff's Office, Hennepin County Attorney's Office, and Hennepin County engaged in acts in furtherance of a conspiracy by using unreasonable and excessive force against Plaintiff while he was in custody including depriving him of adequate medical assistance.

89.    As an actual and proximate result of those actions, Plaintiff was injured and has suffered damages.

90.    Wherefore, as a direct and proximate cause of the actions of Defendants, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

## COUNT IV.
### Assault
### Plaintiff against Defendants Cragin, Rodin, and Hodynsky

91.     Paragraphs 28 through 90 are incorporated herein by reference as though fully set forth.

92.     The actions of Defendants Cragin, Rodin, and Hodynsky, in violently forcing Plaintiff to the ground, striking him in the ribs with a knee numerous times, punching him in the face with a closed fist multiple times, and repeatedly tasing him, constituted a wrongful, malicious, unlawful and intentional act intended to put Plaintiff in immediate, imminent and direct fear and apprehension of an offensive touching by such Defendants.

93.     Defendants Cragin, Rodin, and Hodynsky possessed the present ability and intent to harm Plaintiff and Plaintiff was in fact put in fear of harm from Defendants' actions, which ultimately led to great bodily injury.

94.     Wherefore, as a direct and proximate cause of the actions of such Defendants, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

## COUNT V.
### Battery
### Plaintiff against Defendants Cragin, Rodin, and Hodynsky

95.     Paragraphs 28 through 94 are incorporated herein by reference as though fully set forth.

96.    The actions of Defendants Cragin, Rodin, and Hodynsky, in violently forcing Plaintiff to the ground, striking him in the ribs with a knee numerous times, punching him in the face with a closed fist multiple times, and repeatedly tasing him, constituted an unpermitted and offensive touching or contact with Plaintiff, all to Plaintiff's harm and injury.

97.    Wherefore, as a direct and proximate cause of the actions of such Defendants, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

## COUNT VI.
### Negligence
### Plaintiff against Defendants City of Minneapolis, Harteau, Cragin, Rodin, Grahn, Fossum, McCarty, Moore, Hodynsky, Monterrey Security Consultants, Inc., Stanek, Freeman, Hennepin County, and Hough

98.    Paragraphs 28 through 97 are incorporated herein by reference as though fully set forth.

99.    The Defendants' failure to exercise due care toward Plaintiff by throwing him violently to the ground and striking him numerous times, tasing him multiple times, and arresting him without probable cause, was the actual and proximate cause of Plaintiff's physical and emotional harm.    Further, Defendants failed to provide adequate medical care in accordance with Plaintiff's apparent medical needs, which contributed to his physical and emotional harm and placed him in danger of severe complications.

24

100.    Wherefore, as a direct and proximate cause of the actions of such Defendants, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

**COUNT  VII.**
**Negligent Supervision, Training, Retention, and Hiring**
**Plaintiff against Defendants City of Minneapolis, Harteau, Fossum, Moore,**
**McCarty, Grahn, Monterrey Security Consultants, Inc., SMG, Minnesota**
**Sports Facilities Authority, Minnesota Vikings Football Stadium, LLC,**
**Minnesota Vikings Football, LLC, Stanek, Freeman,**
**Hennepin County, and Hough**

101.    Paragraphs 28 through 100 are incorporated herein by reference as though fully set forth.

102.    The individual police officers, security agents, supervisors and entities who are among the named Defendants involved in the Plaintiff's unlawful arrest had the duty to exercise reasonable care toward Plaintiff.   The individual supervisors, including Chief Harteau and their respective supervisors across all named Defendants down the chain-of-command failed to exercise the appropriate supervision, control, authority, training and/or discipline which failures were the direct and proximate cause of Plaintiff's injuries.

103.    Wherefore, as a direct and proximate cause of the actions of such Defendants, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

## COUNT  VIII.
## Intentional Infliction of Emotional Distress
## Plaintiff against Defendants Cragin, Rodin, and Hodynsky

104.   Paragraphs 28 through 103 are incorporated herein by reference as though fully set forth.

105.   The actions of Defendants Cragin, Rodin, and Hodynsky, in violently forcing Plaintiff to the ground, striking him in the ribs with a knee numerous times, punching him in the face with a closed fist multiple times, and repeatedly tasing him, were intentional acts which caused Plaintiff to reasonably fear for his safety.   Such actions caused and continue to cause Plaintiff severe emotional distress.   Defendants' actions were the natural and foreseeable cause of Plaintiff's ongoing distress

106.   Wherefore, as a direct and proximate cause of the actions of such Defendants, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

## COUNT  IX.
## Negligent Infliction of Emotional Distress
## Plaintiff against Defendants Cragin, Rodin, and Hodynsky

107.   Paragraphs 28 through 106 are incorporated herein by reference as though fully set forth.

108.   Defendants' failure to exercise their duty of due care toward the Plaintiff caused Plaintiff to fear for his safety and suffer severe emotional distress with the addition of numerous physical injuries.

109.   Wherefore, as a direct and proximate cause of the actions of such Defendants, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

## COUNT  X.
## False Arrest
## Plaintiff against Defendants Cragin, Rodin, Grahn, Fossum, McCarty, Moore, Harteau, and City of Minneapolis

110.   Paragraphs 28 through 109 are incorporated herein by reference as though fully set forth.

111.   Defendants' actions in subjecting the Plaintiff to an illegal arrest without probable cause or warrants under the laws of the state of Minnesota. As a direct and proximate result of these actions, Plaintiff suffered injury and harm.

112.   Wherefore, as a direct and proximate cause of the actions of such Defendants, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

## COUNT  XI.
### False Imprisonment
### Plaintiff against Defendants Cragin, Rodin, Grahn, Fossum, McCarty, Moore, Harteau, City of Minneapolis, Stanek, Freeman, Hennepin County, and Hough

113.   Paragraphs 28 through 112 are incorporated herein by reference as though fully set forth.

114.   Defendants unreasonably restrained Plaintiff without lawful reason, probable cause or any justification recognized by law.   As a direct and proximate result of these actions, Plaintiff suffered injury and harm.

115.   Wherefore, as a direct and proximate cause of the actions of such Defendants, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

## COUNT  XII.
### Malicious Prosecution
### Plaintiff against Defendants Cragin, Rodin, Grahn, Fossum, McCarty, Moore, Harteau, City of Minneapolis, Stanek, Freeman, Hennepin County, and Hough

116.   Paragraphs 28 through 115 are incorporated herein by reference as though fully set forth.

117.   Defendants' actions in arresting and filing criminal charges against Plaintiff were without probable cause or reasonable belief of success on the merits of the case, with malicious intent to circumvent or anticipate upcoming or foreseeable civil actions by the Plaintiff from the underlying incident.   The

criminal action was ultimately terminated in favor of the Plaintiff with a not guilty jury verdict.

118.  Wherefore, as a direct and proximate cause of the actions of such Defendants, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

**COUNT  XIII.**
**Respondeat Superior – Intentional Misconduct**
**Plaintiff against Defendants City of Minneapolis, Harteau, Grahn,**
**Fossum, McCarty, Moore, Monterrey Security Consultants, Inc.,**
**SMG, Minnesota Sports Facilities Authority, Minnesota Vikings Football**
**Stadium, LLC, Minnesota Vikings Football, LLC, Stanek, Freeman,**
**Hennepin County, and Hough**

119.  Paragraphs 28 through 118 are incorporated herein by reference as though fully set forth.

120.  The individual Defendants' abovementioned negligent and intentional acts were conducted within the course of their respective employment. Therefore, their superiors, supervisors or controlling agencies are liable.   The source of the harm was related to the duties of the employee(s) and the harm occurred within work-related limits of time and place.   This type of misconduct is a well-known hazard and thus foreseeable; it was additionally related to, and connected with acts otherwise within the scope of their respective employment.

121.   Wherefore, as a direct and proximate cause of the actions of such Defendants, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

## COUNT XIV.
### Respondeat Superior – Negligent Misconduct
### Plaintiff against Defendants City of Minneapolis, Harteau, Grahn, Fossum, McCarty, Moore, Monterrey Security Consultants, Inc., SMG, Minnesota Sports Facilities Authority, Minnesota Vikings Football Stadium, LLC, Minnesota Vikings Football, LLC, Stanek, Freeman, Hennepin County, and Hough

122.   Paragraphs 28 through 121 are incorporated herein by reference as though fully set forth.

123.   The actions of Defendants Cragin, Rodin, and Hodynsky in violently forcing Plaintiff to the ground, striking him in the ribs with a knee numerous times, punching him in the face with a closed fist multiple times, and repeatedly tasing him, and the actions of Defendant Moore in improperly authorizing probable case constituted negligent misconduct committed within the course and scope of employment.

124.   The actions of Defendants Stanek, Freeman, and Hough in failing to provide Plaintiff with adequate medical attention constituted negligent misconduct committed within the course and scope of employment

125.   The actions of Defendants Cragin, Rodin, Hodynsky, Stanek, Freeman, and Hough were to some degree in furtherance of their respective

employers' interests; they were authorized to perform the types of conduct; and the conduct occurred substantially within the respective employers' authorized time and space restrictions.   This type of misconduct is a well-known hazard and thus reasonably foreseeable.

126.   Wherefore, as a direct and proximate cause of the actions of such Defendants, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

## **PRAYER FOR RELIEF**

127. Wherefore, Plaintiff respectfully requests that this court enter judgment in favor of Plaintiff and against the Defendants,

(a) Declaring that the Defendants have violated the guarantees against unreasonable searches and seizures and due process of law under the U.S. and Minnesota Constitutions.

(b) Declaring that the Defendants conspired to violated Plaintiff's rights under the U.S. Constitution.

(c) Permanently enjoining and prohibiting Defendants from interfering with Plaintiff's constitutional rights. Specifically, to enjoin Defendants from:

  i. Retaliating against Plaintiff or his family for bringing this lawsuit.

  ii. From subjecting Plaintiff to unreasonable or excessive use of force in the future.

iii. For an order compelling disclosure of the requested public documents, pursuant to Minn. Stat. § 13.08, subd. 4.

(d) For an award to Plaintiff of his costs, disbursements, and reasonable attorney's fees incurred in this action, pursuant to Minn. Stat. § 13.08, subd. 4.

(e) Awarding damages to compensate Plaintiff for his injuries in an amount to be determined at trial.

(f) Awarding Plaintiff punitive and other exemplary damages based on 42 U.S.C. § 1983 claims.

(g) Awarding costs and attorneys' fees including pursuant to 42 U.S.C. § 1988 and Minnesota law; pre-judgment interest and any other relief deemed necessary and proper.

(h) Plaintiff demands a jury trial as to all available claims triable to a jury.

(i) For leave to amend complaint to include a claim for punitive damages.

(j) For any other relief the court may see fit.

Dated: November 13, 2017            s/ Michael P. Nadimi
                                             Michael P. Nadimi (#0397353)
                                             THE NADIMI LAW GROUP, LLC
                                             IDS Center
                                             80 South 8th Street, Suite 900
                                             Minneapolis, MN 55402
                                             mail@nadimilaw.com
                                             (651) 808-7444

                                         s/ Michael S. Martinez
                                             Michael S. Martinez (#24078933 TX)
                                             *Admitted pro hac vice*
                                             MARTINEZ HSU, P.C.
                                             1601 E. Lamar Blvd. Ste. 114
                                             Arlington, TX 76011
                                             msmartinez@mhlegalgroup.com
                                             (682) 224-7810

                                             Attorneys for Plaintiff Anastacio Lopez