UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Anastacio Lemus Lopez, | Civ. No. 17-1179 (PAM/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Minnesota Vikings Football Stadium, LLC, Monterrey Security Consultants, Inc., Minnesota Sports Facilities Authority, SMG, Janee Harteau, Andrew Hodynsky, Russell Cragin, Anthony Rodin, Michael Grahn, Stephen McCarty, Gerald Moore, Michael Fossum, Richard W. Stanek, David J. Hough, Michael, O. Freeman, being sued in their individual and official capacities, Minnesota Vikings Football, LLC, Hennepin County, and City of Minneapolis, | |
| Defendants. | |

This matter is before the Court on a Motion to Dismiss by Defendant Minnesota Sports Facilities Authority ("MSFA"). For the following reasons, the Motion is granted in part and denied in part.

## BACKGROUND

In 2012, the Minnesota Legislature delineated the MSFA's powers, duties, and control over not-yet-constructed U.S. Bank Stadium in Minneapolis, Minnesota, including the authority to "delegate such duties through an agreement." Minn. Stat. § 473J.09, subd. 5. The MSFA ultimately contracted with Defendant SMG to manage and operate U.S. Bank Stadium as "an independent contractor of the [MSFA]." (Bjorklund Decl. (Docket No. 120-1) Ex. 1.) SMG contracted with Defendant Monterrey

Security Consultants, Inc., to provide security services at U.S. Bank Stadium.  (Id. (Docket No. 121) Ex. 2.)  SMG also entered into individual agreements with Minneapolis police officers to work in an off-duty capacity at U.S. Bank Stadium events.  (Id. (Docket No. 123) Ex. 3.)[1]

On December 1, 2016, Plaintiff Anastacio Lopez attended a Minnesota Vikings game at U.S. Bank Stadium.  (Am. Compl. (Docket No. 93) ¶ 30.)  During the game, off-duty Minneapolis police officers asked Lopez to accompany them to a security processing center before ejecting him from the venue.  (Id. ¶¶ 31, 33.)  Lopez voluntarily complied and accompanied the officers to the security processing center.  (Id. ¶ 32.)

At some point on the way to the processing center, the Defendant police officers and Defendant Andrew Hodynsky, a Monterrey Security employee, allegedly "attacked [Lopez] while [he] was in custody, due to his color and ethnicity."  (Id. ¶ 1.)  Lopez brought this lawsuit against the individual police officers and Hodynsky, claiming assault, battery, and use of excessive force.  He also alleges negligence and respondeat superior against the MSFA and numerous other Defendants, including SMG and Monterrey Security.  The MSFA has moved to dismiss the three Counts against it: Count VII alleges negligent supervision, training, retention, and hiring.  Counts XIII and XIV are respondeat superior claims of intentional and negligent misconduct.  (Am. Compl. ¶¶ 101-03, 119-26.)

---

[1] The Court may consider these contracts on a motion to dismiss because the Amended Complaint necessarily embraces them.  See Zean Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017).  But the Court will not consider Exhibits 2 through 5 that Lopez filed in opposition to this Motion because they are news articles not embraced by the pleadings.  (See Martinez Decl. (Docket No. 132) Exs. 2-5.)

**DISCUSSION**

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the allegations in the Amended Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the non-moving party. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). But the Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

A complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

**A.     Negligent Hiring, Retention, Supervision, and Training**

As a threshold matter, the MSFA contends that a negligent-training claim is not actionable in Minnesota. See Johnson v. Peterson, 734 N.W.2d 275, 277 (Minn. Ct. App. 2007) ("Minnesota law does not recognize a cause of action for negligent training."). The Court agrees and dismisses the negligent-training claim in Count VII. Insofar as

3

Count VII alleges negligent hiring, retention, and supervision against the MSFA, the MSFA argues that these claims fail either under the doctrine of statutory immunity or because they are not supported by sufficient factual allegations.

The MSFA argues that statutory immunity bars Lopez's claims of negligent hiring, retention, and supervision because these are planning-level decisions that fall under the discretionary-acts exception to municipality liability.

Subject to enumerated exceptions, "a municipality is liable for its torts and the torts of its agents." Magnolia 8 Props., LLC v. City of Maple Plain, 893 N.W.2d 658, 662 (Minn. Ct. App. 2017) (citing Minn. Stat. § 466.02)). "The [MSFA] is a municipality within the meaning of chapter 466." Minn. Stat. § 473J.09, subd. 1. One exception in chapter 466 immunizes a municipality from tort liability for "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty." Minn. Stat. § 466.03, subd. 6. "[D]ecisions involving supervision and retention of employees are discretionary acts entitled to statutory immunity." Gleason v. Metro. Council Transit Operations, 563 N.W.2d 309, 320 (Minn. Ct. App. 1997), aff'd in part, rev'd in part on other grounds, 582 N.W.2d 216 (Minn. 1998). Similarly, a claim regarding municipality's hiring decisions "are barred by statutory immunity" because such decisions "are based on policy level activity." Id.

Lopez argues that the MSFA's hiring, retention, and supervision decisions involve factual questions and, under the circumstances, are not planning-level decisions. (Pl.'s Opp'n Mem. (Docket No. 96) at 9-11.) But Minnesota courts have definitively concluded that a municipality's hiring, retention, and supervision decisions are

4

discretionary acts. See, e.g., Gleason, 563 N.W.2d at 320. And whether a municipality's decisions "are a discretionary function is a legal question." Snyder v. City of Minneapolis, 441 N.W.2d 781, 786 (Minn. 1989). Even assuming as true the factual allegations in the Amended Complaint, the Court concludes that the MSFA is entitled to statutory immunity because its hiring, retention, and supervision decisions are discretionary acts. Count VII is dismissed against the MSFA.

Even if statutory immunity is inapplicable, the MSFA contends that the Amended Complaint does not contain sufficient factual allegations to support these claims. A negligent hiring claim requires Lopez to prove that the MSFA "knew or should have known" that a prospective employee's incompetence would cause foreseeable harm, and the MSFA hired the employee anyway. Ponticas v. K.M.S. Invs., 331 N.W.2d 907, 912 (Minn. 1983). A negligent retention claim requires a similar allegation that an employer failed to take remedial measures against an employee after the employer became aware or should have become aware of that employee's incompetence. Benson v. Nw. Airlines, Inc., 561 N.W.2d 530, 540 (Minn. Ct. App. 1997). "To prevail on a claim of negligent supervision, a plaintiff must prove that the employee's conduct was foreseeable and that the employer failed to exercise ordinary care when supervising the employee." Oslin v. State, 543 N.W.2d 408, 415 (Minn. Ct. App. 1996).

Here, the Amended Complaint does not allege that the MSFA knew or should have known anything about the Minneapolis police officers or Monterrey Security employee, that their actions were foreseeable, or that the MSFA failed to exercise

5

ordinary care. Plaintiffs' factual allegations are thus insufficient to maintain a claim of negligent hiring, retention, or supervision even if statutory immunity does not apply.

Lopez contends that the "fact section of the complaint lays out how [he] was injured and details the extent of [his] injuries." (Pl.'s Opp'n Mem. at 12.) But the MSFA does not challenge the existence and extent of Lopez's injuries. Lopez also contends that the Amended Complaint alleges that the MSFA failed to exercise appropriate supervision, control, authority, and training, and that these failures "were the direct and proximate cause of [his] injuries." (Id.) But these are mere conclusory statements, unsupported by factual allegations. See Iqbal, 556 U.S. at 678 (stating that a plaintiff must do more than allege "mere conclusory statements" to survive a motion to dismiss).

Count VII is dismissed against the MSFA because it is barred by statutory immunity, and regardless, Lopez has not alleged sufficient facts to maintain a claim of negligent hiring, retention, supervision against MSFA.

**B.    Respondeat Superior**

The MSFA first argues that Lopez's respondeat superior claims fail because it cannot be liable for the actions of police officers in their official capacity. "Private persons will be relieved from liability for the acts of commissioned police officers when performed in their official capacity although private persons paid such officers for services in and about the private employer's property." Graalum v. Radisson Ramp, Inc., 71 N.W.2d 904, 907 (Minn. 1955); see also Green v. BCE Dev. Props., Inc., No. C2-96-1892, 1997 WL 161832, at *2 (Minn. Ct. App. Apr. 8, 1997) ("A private entity is not liable for the acts of police officers acting in their official capacity, even though the entity

6

pays such officers to perform private services."). But the MSFA is not a private entity, it "is a public body" and municipality. Minn. Stat. § 473J.09, subd. 1. Thus, this argument does not apply to MSFA, and the Court need not address it further.

The MSFA next argues that the respondeat superior claims fail because it is not in a principal-agent relationship with any of the individual employees and cannot be liable for the actions of an "employee of a second-tier independent contractor." (Def.'s Supp. Mem. (Docket No. 118) at 12-18.)

Respondeat superior liability may be imposed if a "principal-agent relationship exists between the tortfeasor and a third party." Urban ex rel. Urban v. Am. Legion Post 184, 695 N.W.2d 153, 160 (Minn. Ct. App. 2005). A principal-agent relationship generally requires "consent by one person to another that the other shall act on his behalf and subject to his control." Id. (quotation omitted). "[I]ndependent contractors are 'not subject to any control or right of control with respect to their physical conduct in carrying out the undertaking.'" Id. (quoting Frankle v. Twedt, 47 N.W.2d 482, 487 (Minn. 1951)). Thus, "[g]enerally speaking, an employer of an independent contractor cannot be held vicariously liable for the contractor's acts or omissions." Newton v. Walker, No. 11-CV-1499, 2012 WL 4856163, at *6 (D. Minn. Oct. 12, 2012) (Schiltz, J.); see also Conover v. N. States Power Co., 313 N.W.2d 397, 403 (Minn. 1981) (stating that "the employer of an independent contractor" cannot be liable for harm caused "by an act or omission of the contractor or his servants"). But an "employer can be liable for its own negligence" if it "retains detailed control over the work of [an independent] contractor and then fails to act

7

reasonably in exercising that control." Newton, 2012 WL 4856163, at *6 (citing Anderson v. State, Dep't of Nat. Res., 693 N.W.2d 181, 189 (Minn. 2005)).

Lopez first argues that SMG, Monterrey Security, Hodynsky, and the police officers were employees—not independent contractors—of MSFA. (Opp'n Mem. at 14-16.) Minnesota courts consider a number of factors to distinguish an employee from an independent contractor, including "(1) [t]he right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge." Guhlke v. Roberts Truck Lines, 128 N.W.2d 324, 326 (Minn. 1964).

Here, the Amended Complaint only alleges that the MSFA "contracted with SMG" and that "security services . . . had been subcontracted by SMG to Monterrey Security." (Am. Compl. ¶ 19.) It contains no other factual allegations regarding the relationship between the MSFA and Hodynsky or the police officers. The contracts suggest that the tortfeasors were all independent contractors of the MSFA. The contract between the MSFA and SMG stated that SMG acts "as an independent contractor of the [MSFA]." (Bjorklund Decl. Ex. 1 at 2.1(a).) The contract between SMG and Monterrey Security stated that Monterrey Security "shall be and remain an independent contractor." (Id. Ex. 2 at 14.) And the contract between SMG and the off-duty police officers states that the officers will work "in an off-duty capacity as an employee of SMG." (Id. Ex. 3.)

Because Amended Complaint fails to allege any facts regarding the employment relationship between MSFA and the tortfeasors, and because the contracts indicate that the tortfeasors are independent contractors of MSFA, Lopez's respondeat superior claims

8

against MSFA can only survive if MSFA "retain[ed] detailed control over [their work]." Anderson, 693 N.W.2d at 189. The Amended Complaint fails to allege that MSFA retained any type of control over Hodynsky or the Minneapolis police officers.

Lopez contends that he expects to demonstrate numerous facts at trial to support his respondeat-superior claims against MSFA, including that "MSFA retained control of, and was involved in, stadium operations" and that "MSFA overtly joined in the vetting and hiring decision process culminating in Monterrey's security contract with SMG." (Pl.'s Opp'n Mem. at 2-3.) But these allegations are not in the Amended Complaint. The Court thus dismisses the respondeat-superior claims against MSFA because they are not supported by sufficient factual allegations.

## C.    Leave to Amend Complaint

In the alternative to dismissal, Lopez requests that the Court grant leave to amend his complaint. Courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2); see Foman v. Davis, 371 U.S. 178, 182 (1962).

Because statutory immunity bars Count VII of the Amended Complaint, the Court only grants Lopez leave to amend his respondeat-superior claims. Should he choose to amend, Lopez must allege facts with enough specificity "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

## CONCLUSION

Lopez's claim of negligent hiring, retention, and supervision against MSFA is barred by statutory immunity. The respondeat-superior claims are not supported by

sufficient factual allegations, but Lopez may amend his complaint to correct that deficiency. Accordingly, **IT IS HEREBY ORDERED that**:

1. MSFA's Motion to Dismiss (Docket No. 96) is **GRANTED in part and DENIED in part**;

2. Count VII of the Amended Complaint (Docket No. 93) is **DISMISSED with prejudice** against MSFA; and

3. Counts XIII and XIV of the Amended Complaint (Docket No. 93) are **DISMISSED without prejudice** against MSFA.

Dated: January 30, 2018

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge